No. 99,487

STATE OF KANSAS, *Appellee*, v. CLIFFORD D. O'REAR, *Appellant*.

(270 P.3d 1127)

Opinion filed February 17, 2012.

*Lydia Krebs*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Edmond D. Brancart*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

*Per Curiam*: A jury convicted Clifford D. O'Rear of one count of reckless aggravated battery under K.S.A. 21-3414(a)(2)(A). On direct appeal to the Court of Appeals, O'Rear argued, among other things, that the trial evidence was insufficient to support his conviction because the State failed to show that he acted recklessly in intentionally shooting the victim. The Court of Appeals rejected this and O'Rear's other claims and affirmed his conviction. This court granted O'Rear's petition for review and has jurisdiction under K.S.A. 20-3018(b) (petition for review) and K.S.A. 22-3602(e) (same).

We reverse O'Rear's conviction, concluding the evidence established that O'Rear intentionally shot a gun at the center mass of the victim; thus, he intended the conduct of shooting and the result of causing injury. We reject the State's argument that this intent was mitigated because O'Rear mistook the facts and acted under the mistaken and unreasonable belief that he needed to defend

himself or others; these facts do not change the intentional nature of O'Rear's action to shoot and disable the victim.

## FACTS AND PROCEDURAL BACKGROUND

The facts are generally undisputed. On the morning of June 26, 2006, 60-year-old Samuel L. Jackson walked to his bank intending to cash a check. It was a cool but sunny morning, so Jackson wore a black stocking cap and sunglasses. Jackson, who suffers from arthritis in his hip and an injured knee, walks with a cane. Jackson's bank was located on the second floor of an office building, and Jackson rode the escalator up to the bank.

O'Rear, a security guard at the bank, noticed Jackson as he reached the top of the escalator. O'Rear focused on Jackson because of the stocking cap and sunglasses. O'Rear then noticed something in Jackson's hand, which O'Rear first thought was a pistol. O'Rear testified that the object was slightly behind Jackson's leg and slightly obscured by Jackson's trousers. Jackson had his hand up to his face, and O'Rear thought it looked like Jackson was trying to hide his face from the camera that was above O'Rear's head. As O'Rear "looked at [the object] for another second," he noticed that it was much longer and thought that it was a shotgun.

At that point, O'Rear "jumped out of the chair," drew his Glock pistol, and moved in a direction to keep Jackson from the door of the bank "in case we had a gun fight, which I thought we were gonna have." O'Rear said once, "drop the gun," and Jackson then turned toward him.

Jackson testified that as he got to the top of the escalator, he noticed O'Rear get up, throw down a newspaper, and then draw his gun. O'Rear started moving to Jackson's left, and Jackson assumed that O'Rear saw something toward that direction. Jackson testified that his only concern when he got to the top of the escalator was to clear out of the way of whatever was going on. Jackson put his cane a step ahead of him to maintain his balance and took a step toward the bank lobby to get out of the way. At this point Jackson heard O'Rear say, "I said drop it," so Jackson turned his head and upper body to look at O'Rear to see what was going on. Jackson was still unsure whether O'Rear was talking to him.

O'Rear mistook Jackson's actions of turning to look at him as Jackson's attempt to "bring[ ] the gun to bear on me." O'Rear fired a single shot at "center mass." The bullet struck Jackson beneath his armpit and lodged in the back of his rib cage. The bullet also punctured Jackson's lungs, causing them to collapse. The shot caused Jackson to fall back down the escalator; the escalator carried Jackson back to the upper level and "chewed" into the side of his body. At this point, O'Rear discovered that what he thought was a shotgun was actually Jackson's cane and, according to his testimony, O'Rear "lost it." Nonetheless, at trial, O'Rear testified that if put in the same situation again, he would take the same actions.

The State charged O'Rear with reckless aggravated battery in violation of K.S.A. 21-3414(a)(2)(A). At trial, after the close of the State's case, O'Rear moved to dismiss the charge of reckless aggravated battery, arguing that it was an intentional shooting and the State made no showing of reckless conduct. The State argued that O'Rear's choice to shoot under these circumstances disregarded the risks of his actions and, therefore, was reckless. The trial court denied O'Rear's motion on the ground that it was the jury's role to determine the question of whether this was a reckless act.

The jury convicted O'Rear of aggravated battery as charged. O'Rear filed a motion for new trial, first arguing there was insufficient evidence to convict him of reckless aggravated battery because the "State's evidence was insufficient to show a conscious disregard, as it only was able to show the jury that the victim was riding up an escalator, was shot, and that he has no idea why." O'Rear also argued that juror misconduct occurred when a juror admitted to considering evidence outside that presented at trial. The trial court denied O'Rear's motion. The court sentenced O'Rear to 34 months' imprisonment but granted him 36 months of probation followed by 24 months' postrelease supervision.

O'Rear appealed.

*Court of Appeals' Decision*

O'Rear raised numerous issues on appeal: sufficiency of the evidence, prosecutorial misconduct, juror misconduct, failure to in-

struct on lesser included offenses, and a sentencing error. *State v. O'Rear*, No. 99,487, 2009 WL 1140249 (Kan. App. 2009) (unpublished opinion).

The Court of Appeals first addressed O'Rear's claim that the State failed to produce any evidence at trial that he acted recklessly because O'Rear, himself, maintained that he acted intentionally when he shot Jackson. The panel pointed to the State's evidence that O'Rear overreacted and failed to positively identify whether Jackson possessed a weapon before he shot Jackson. The panel also noted that O'Rear had nonlethal weapons that he did not use, only shouted one vague order from a concealed location, which was out of Jackson's line of sight, and ultimately placed himself in a position to shoot in the general direction of the bank lobby. The panel found this evidence to be sufficient to prove that O'Rear acted " 'under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger.' " *O'Rear*, 2009 WL 1140249, at *3 (quoting K.S.A. 21-3201[c]).

The Court of Appeals panel also rejected O'Rear's arguments regarding prosecutorial misconduct, juror misconduct, jury instruction error, and sentencing issues. *O'Rear*, 2009 WL 1140249, at *4-8.

## ANALYSIS

The first issue before this court, and the only one we reach, involves O'Rear's claim that the State failed to present any evidence of reckless conduct. O'Rear maintains the evidence establishes that he acted "purposefully and willfully" rather than "recklessly and unintentionally." According to O'Rear, "[t]he State provided no evidence that [he] did not intend to shoot Jackson." Rather, he asserts the undisputed evidence, including his own testimony, is that he intended to shoot his gun and he purposefully shot at Jackson's center mass in an effort to disable him and render him unable to exchange gunfire.

Conversely, as sufficient evidence of reckless conduct, the State points to evidence that O'Rear shot Jackson before he confirmed that Jackson was carrying a shotgun. The State argues:

"O'Rear's reckless act was not in pulling the trigger, but instead it was in deciding to shoot with too little information. . . . He was reckless in acting on an uninformed decision to shoot while knowing the consequences of shooting a person but disregarding that risk and pulling the trigger anyway. He never intended to shoot an unarmed bank customer who posed no imminent threat, which is what he did."

## Standard of Review

When a defendant challenges the sufficiency of the evidence in a criminal case, the standard of review is whether after reviewing all the evidence in the light most favorable to the State, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Martinez*, 290 Kan. 992, 1003, 236 P.3d 481 (2010).

## K.S.A. 21-3414(a)(2)(A)

Various severity levels of aggravated battery are set forth in K.S.A. 21-3414. Under the statute, the culpability of a defendant's actions is defined in two ways: (1) by the defendant's mental state and (2) by the type of physical contact or the nature of the bodily harm that results. Regarding the first categorization based on mental state, some severity levels of aggravated battery are based on a defendant "intentionally causing" bodily harm or physical contact in one of several specified ways. See K.S.A. 21-3414(a)(1)(A)-(C). Other severity levels of aggravated battery are defined in K.S.A. 21-3414(a)(2)(B) as a defendant "recklessly causing" great bodily harm or bodily harm in certain specified ways. Under the provision with which O'Rear was charged, K.S.A. 21-3414(a)(2)(A), the law prohibits "recklessly causing great bodily harm" or disfigurement.

"Reckless conduct" means "conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger. The terms 'gross negligence,' 'culpable negligence,' 'wanton negligence' and 'wantonness' are included within the term 'recklessness' as used in this code." K.S.A. 21-3201(c).

## Cases Applying Statute

Applying these statutory provisions to the facts of this case, O'Rear argues his conduct of intentionally shooting a gun at a per-

son's center mass with the intent to render that person unable to engage in a gunfight is the same as that of the defendants in several Kansas cases where the court has concluded shooting at a person is intentional, not reckless. Primarily, as before the Court of Appeals, O'Rear relies on *State v. Berkstresser*, No. 94,131, 2007 WL 518832 (Kan. App.) (unpublished opinion), arguing the decision most closely resembles his case.

In *Berkstresser*, the defendant and the victim, Todd Clark, were involved in a dispute. Clark testified that Ryan Berkstresser intentionally shot him. Berkstresser testified that Clark was choking him so Berkstresser fired two shots at the ground to frighten Clark and then aimed higher. A jury found Berkstresser guilty of intentional aggravated battery in violation of K.S.A. 21-3414(a)(1)(A).

On appeal, Berkstresser contended the trial court erred in not instructing the jury on the lesser severity levels of aggravated battery. Berkstresser did not request these instructions at trial. The Court of Appeals found that the evidence did not support the giving of instructions on the two levels of reckless aggravated battery because under either Clark's or Berkstresser's version of events, Berkstresser intentionally fired the gun toward Clark. The *Berkstresser* court stated that "such conduct is intentional rather than reckless." *Berkstresser*, 2007 WL 518832, at *6.

The *Berkstresser* court distinguished the facts of its case from those in *State v. Ochoa*, 20 Kan. App. 2d 1014, 1020-21, 895 P.2d 198 (1995) (great bodily harm), *disapproved on other grounds by State v. Valentine*, 260 Kan. 431, 435, 921 P.2d 770 (1996), *disapproved by State v. Brice*, 276 Kan. 758, 80 P.3d 1113 (2003) (disapproving statement that through and through bullet wound is great bodily harm as a matter of law). The *Ochoa* court determined that reckless battery instructions were warranted when the defendant testified that he did not intend to shoot anyone; he merely shot in the air to frighten others. These facts, the court concluded, could support a verdict that the defendant acted recklessly. *Ochoa*, 20 Kan. App. 2d at 1020-21.

O'Rear maintains his actions were similar to those of Berkstresser and unlike those of Ochoa; he intended to shoot, rather than frighten, Jackson. Further, O'Rear relies on a statement in *State v.*

*Bradford*, 27 Kan. App. 2d 597, 602, 3 P.3d 104 (2000), in which the court quoted from *Duran v. State*, 990 P.2d 1005, 1009 (Wyo. 1999), to support its holding that self-defense is not available when a defendant is charged with reckless conduct. In the quotation, the Wyoming court stated " '[a] charge of recklessness involves an unintentional act.' "

Discussing these cases, the Court of Appeals ·in this case first noted the quotation in *Bradford* was dicta and related to a different issue. The court then stated:

> "The State does not suggest that O'Rear's conduct was unintentional. The State claims that O'Rear was purposeful and willful when he shot Jackson; however, he consciously and unjustifiably disregarded that danger when he fired at an unarmed civilian who posed no threat. Thus, although O'Rear's conduct was intentional, his conduct was also reckless."

On review, O'Rear cites additional authorities that he maintains stand for the proposition that when a gun is intentionally fired in the direction of the victim, the conduct is intentional only and cannot also be found to be reckless. Some cases arise where a defendant is charged with an intentional homicide and argues his actions were reckless.

Specifically, O'Rear cites to *State v. Bailey*, 263 Kan. 685, 691, 952 P.2d 1289 (1998), *overruled on other grounds by State v. Davis*, 283 Kan. 569, 158 P.3d 317 (2006), because of its statement that "a defendant's actions in pointing a gun at someone and pulling the trigger are intentional rather than reckless." *Bailey* is discussed in *State v. Deal*, 293 Kan. 872, 269 P.3d 1282 (2012), along with decisions applying a similar analysis, including *State v. Clark*, 261 Kan. 460, 931 P.2d 664 (1997) (shooting; premeditated first-degree murder defendant seeks second-degree reckless lesser included offense instruction) and *State v. Pierce*, 260 Kan. 859, 927 P.2d 929 (1996) (shooting; premeditated first-degree murder defendant seeks second-degree reckless lesser included offense instruction); see also *State v. Cavaness*, 278 Kan. 469, 101 P.3d 717 (2004) (citing to *Bailey* in context of a death resulting from a beating; premeditated first-degree murder defendant seeks second-degree reckless lesser included offense instruction); *State v. Jones*, 267 Kan. 627, 984 P.2d 132 (1999) (citing to *Bailey* in context of a

manual strangulation; intentional second-degree murder defendant seeks second-degree reckless lesser included offense instruction).

These cases all apply K.S.A. 21-3402, which provides: "Murder in the second degree is the killing of a human being committed: (a) Intentionally; or (b) unintentionally but recklessly under circumstances manifesting extreme indifference to the value of human life." K.S.A. 21-3402 explicitly distinguishes between intentional and unintentional but reckless conduct, clearly focuses the intent element on the result, and is a specific intent crime. See *Deal*, 293 Kan. at 885. In this appeal, O'Rear argues that aggravated battery is a general intent crime. Consequently, these cases, which relate to a specific intent crime, are potentially distinguishable. We need not determine whether the distinction is real because under the facts of this case O'Rear admitted to having the specific intent to both shoot Jackson and to cause sufficient bodily harm that Jackson could not return fire. O'Rear acted intentionally.

Consequently, we agree with O'Rear that *Berkstresser*, 2007 WL 518832, supports his argument. Also relevant are some additional cases cited by O'Rear that apply the aggravated battery instruction: *State v. Graham*, No. 94,777, 2006 WL 2043219 (Kan. App. 2006) (unpublished opinion); *Tucker v. State*, No. 89,661, 2004 WL 90056, at *5 (Kan. App. 2004) (unpublished opinion); *State v. Roberts*, No. 91,322, 2004 WL 2977478 (Kan. App. 2004) (unpublished opinion).

In the earliest of these aggravated battery cases, *Roberts*, the victim testified that Roberts intentionally shot him, whereas Roberts' version was that during a struggle the gun accidentally went off. The Court of Appeals ruled that the trial court did not err in failing to instruct on reckless aggravated battery because the evidence showed either that Roberts intentionally shot the victim or the gun discharged accidentally; there was no evidence Roberts acted recklessly. *Roberts*, 2004 WL 2977478, at *1-2. In *Tucker*, the Court of Appeals rejected the defendant's contention that the trial court should have provided the jury an instruction on reckless aggravated battery as a lesser included offense because the only evidence at trial was the victim's testimony that the defendant in-

tentionally shot her. *Tucker,* 2004 WL 90056, at *5. Likewise, in *Graham,* the Court of Appeals determined that an instruction on reckless aggravated battery was not warranted because the evidence showed only that the defendant intentionally stabbed the victim. The court stated there was no evidence to support a conviction for reckless aggravated battery; this was not an instance "where she waved the knife around injuring [the victim] by chance." *Graham,* 2006 WL 2043219, at *3.

Nevertheless, the State argues that these cases do not foreclose a determination that the purposeful act of shooting can be reckless. As the State points out, none of these cases considered the possible mitigating circumstance of a defendant misunderstanding or misperceiving the circumstances that caused the defendant to form the decision to shoot another person.

### Reckless Action

The State, in making these arguments, focuses on other facts, specifically those facts that led O'Rear to conclude he was facing a potential assailant and needed to respond with gunfire rather than a lesser degree of force. In other words, the State suggests that intentional acts can be considered reckless when the intent to commit the act is formed from a mistaken understanding of facts that lead the actor to believe his or her action is justified. Under the facts of this case, if this argument was presented by a defendant, it would be an imperfect self-defense argument. In essence, the defendant would be arguing that he or she had an honest, but objectively unreasonable, belief that force was necessary. In a turn of the usual posture, here the State argues that O'Rear formed an honest belief that force was necessary and, because the jury rejected O'Rear's arguments regarding self-defense, that belief must be considered objectively unreasonable. Rather than presenting this theory as a defense, the State uses this theory to argue that intentional conduct morphed into reckless conduct.

This argument does not withstand an examination of the historical and conceptual roots of the imperfect self-defense doctrine, which reveals that a mistaken belief regarding the existence of facts that justify an action does not negate intent. The application of

imperfect self-defense in Kansas was explained in *State v. Kirk-patrick*, 286 Kan. 329, 339, 184 P.3d 247 (2008), where this court stated:

"Perfect self-defense is a concept based on justification or excuse and operates as a complete defense. It applies broadly to all crimes involving the use of force against another. See K.S.A. 21-3211 (Furse) *et seq.* Imperfect self-defense, in contrast, is based not on justification, but on mitigation and, thus, operates only to reduce criminal culpability to a lesser crime. 40 Am. Jur. 2d, Homicide § 139. Imperfect self-defense is 'not a true defense; it does not absolve a defendant of criminal liability. It is, rather, a lesser degree of the crime of homicide.' *State v. Carter*, 284 Kan. 312, 326, 160 P.3d 457 (2007)."

The *Kirkpatrick* court explained that the Kansas Legislature had codified imperfect self-defense in both the voluntary and involuntary manslaughter statutes. K.S.A. 21-3403(b) defines voluntary manslaughter to include the *intentional* killing of a human being committed upon an unreasonable but honest belief that circumstances existed that justified deadly force. The involuntary manslaughter provision, K.S.A. 21-3404(c), provides for an *unintentional* killing during the commission of a lawful act in an unlawful manner. For purposes of this case, it is noteworthy that neither is defined in terms of "recklessness."

Furthermore, the *Kirkpatrick* court explained that imperfect self-defense is only available in homicide cases, explaining:

"[I]mperfect self-defense exists only as a lesser degree of the crime of homicide. ' "Outside of homicide law, the concept [of imperfect self-defense] doesn't exist. . . . With respect to all other crimes, the defendant is either guilty or not guilty. . . . There is no 'in between.' " ' 2 LaFave, Substantive Criminal Law § 10.4(i) (2d ed. 2003) (quoting, *Bryant v. State*, 83 Md. App. 237, 244-45, 574 A.2d 29 [1990]) (imperfect self-defense only applies to homicide crimes and their 'shadow forms' such as attempted murder; it does not apply to assault, battery, assault with intent to disable, or maiming); see also *Jones v. State*, 357 Md. 408, 422-23, 745 A.2d 396 (2000) (doctrine of imperfect self-defense applies only to criminal homicide and its shadow forms; it has no applicability to other assaultive crimes)." *Kirkpatrick*, 286 Kan. at 339-40.

Based on this authority, the *Kirkpatrick* court held "imperfect self-defense is not a defense to criminal discharge of a firearm." *Kirkpatrick*, 286 Kan. at 340.

The Maryland cases on which the *Kirkpatrick* court relied are instructive. The most extensive discussion of the rationale of these cases is found in *Richmond v. State*, 330 Md. 223, 623 A.2d 630 (1993), *abrogated by Christian v. State*, 405 Md. 306, 311, 333, 951 A.2d 832-35 (2008) (abrogation does not alter *Richmond's* discussion of basic principles but changes their application in context of felony murder where underlying predicate felony supplies malice).

The *Richmond* court, as we did in *Kirkpatrick*, explained that imperfect self-defense is a mitigation defense. Mitigation defenses, the court explained, have historically applied only to homicides and shadow offenses. *Richmond*, 330 Md. at 233. To explain this development, the court quoted from LaFave & Scott, Handbook on Criminal Law § 76, p. 582 (1972), in which the authors discussed another mitigation defense, heat of passion, and answered the question of " ' "[w]hy is it that there exists such a crime as voluntary manslaughter to aid one who kills when provoked into a passion, yet there is no crime like, say, voluntary theft or voluntary mayhem to aid others who, reasonably provoked into a passion, steal from or maim their tormentors?" ' " *Richmond*, 330 Md. at 231-32. The authors explained:

" 'The answer is historical. With most crimes other than murder the English court came to have discretion as to the punishment and so could take extenuating circumstances into account in the sentencing process; but with murder the penalty remained fixed at death, without the possibility of making any allowance for the extenuating fact that the victim provoked the defendant into a reasonable passion. "The rule of law that provocation may, within narrow bounds, reduce murder to manslaughter, represents an attempt by the courts to reconcile the preservation of the fixed penalty for murder with a limited concession to natural human weakness." ' " *Richmond*, 330 Md. at 231-32.

In addition, the *Richmond* court explained the distinction between mitigation of culpability and proof of intent, noting that the distinction had led other courts to reject imperfect self-defense for nonhomicide crimes. The court expanded that reasoning by stating:

"The defense of absence of the requisite specific intent to commit a crime should not be confused with the principle of mitigation. A defendant may intend the exact result he brings about, but be entitled to mitigation because of the circumstances that caused him to act. On the other hand, a defendant not entitled

to mitigation may present as a defense evidence of an honestly held though ob-jectively unreasonable belief that is inconsistent with the specific intent required to convict." *Richmond*, 330 Md. at 234.

This distinction underscores the conclusion that O'Rear acted intentionally. Here, the State's argument and the Court of Appeals' analysis confuses the requisite intent to commit a crime with the principle of mitigation and applies the concept of imperfect self-defense in a nonhomicide situation where it is not available.

The only evidence presented at trial was that O'Rear intended to shoot Jackson in center mass; in other words, he intended to cause great bodily harm to Jackson. The reasons he intended to do so may have been born of misperception, but the intention re-mained. The mental state of recklessness is incompatible with a mental state where a person acts with knowledge, willfulness, or purposefulness, meaning a person cannot act both intentionally and recklessly with respect to the same act. *State v. Shannon*, 258 Kan. 425, 429, 905 P.2d 649 (1995). Rather, an act is either intended or not intended; it cannot simultaneously be both. Consequently, guilt of one necessarily negates guilt of the other.

Under the facts of this case, the State failed to establish that O'Rear committed reckless aggravated battery under K.S.A. 21-3414(a)(2)(A) because it did not prove that O'Rear recklessly caused great bodily harm to Jackson with a deadly weapon. Rather, the only evidence was that O'Rear intentionally caused the injury so that Jackson could not engage in a gun battle.

Reversed.

\* \* \*

LUCKERT, J., dissenting: I disagree with the majority and would find that there was sufficient evidence to support the jury's verdict that Clifford O'Rear recklessly caused great bodily harm to Samuel Jackson.

As the majority points out, the standard of review requires us to view the evidence in the light most favorable to the State. *State v. Martinez*, 290 Kan. 992, 1003, 236 P.3d 481 (2010). Rather than do this, the majority has focused on facts that are contrary to the

verdict and has justified doing so because those facts prove a different crime than the one charged.

Under the twist from the usual that occurred in this case, it was in O'Rear's potential best interest to admit to intentional actions, rather than to try to make his actions seem reckless. Hence, it was to his benefit to admit that he purposefully fired at center mass. Yet other evidence suggests that O'Rear was not paying attention to what was happening around him and reacted hurriedly without assessing the situation. From this evidence a reasonable jury could conclude O'Rear did not intentionally cause great bodily harm to Jackson. Rather, the jury could conclude that O'Rear's conduct in firing the gun was as reckless as his assessment of the situation. Yet, the majority accepts O'Rear's self-serving statement as unassailable.

As an appellate court we should filter the evidence that is contrary to the verdict and set it aside, meaning that in this case we should not consider the evidence of intentional conduct but should examine the record for evidence that supports the verdict of reckless conduct. In doing so, an appellate court should not expect the State to have disproved the elements of other crimes, such as an intentional crime when it had charged a reckless crime. Consequently, applying the sufficiency of evidence standard of review, I would not exonerate a defendant because the State proved a less culpable crime when evidence could also be viewed as supporting the more culpable offense.

As one court explained in sustaining a verdict for reckless endangerment despite evidence that the defendant purposely harmed the victim, when a legislature describes the requisite mental state for a crime, it describes the

"minimum content for a finding of guilt in a particular degree, not the maximum content. It is always a defense to prove that one is less culpable than charged. It is not a defense to prove that one is more culpable than charged. One does not defend against a charge of second-degree murder by proving that one was really guilty of first-degree murder. To prove culpability at a given level, the State is not required to disprove greater culpability, although a casual scanning of definitional sentences might sometimes lead us to believe so.

. . . .

"To be guilty of reckless endangerment, the defendant must be shown to have possessed nothing less than a reckless disregard of the consequences of his life-threatening act. He may, however, be shown to have possessed a more blameworthy *mens rea*, such as an intent to maim, but that excess culpability will be simply surplusage as far as the reckless endangerment charge is concerned. It certainly does not operate to exculpate him of the reckless endangerment.

"This type of linguistic problem is a recurring phenomenon in the criminal law. Although slack linguistic usage frequently describes a lesser degree of guilt in terms of the absence of a greater degree of guilt, the absence of the greater guilt is never an affirmative element that must be proved." *Williams v. State*, 100 Md. App. 468, 477, 641 A.2d 990 (1994).

For example, the court noted: "Second-degree murder is frequently described as unpremeditated murder. It does not, however, require proof of nonpremeditation." *Williams*, 100 Md. App. at 477. Further explaining its reasoning by example, the *Williams* court stated:

"How, one might ask, could a single manslaughter, for instance, be both involuntary and voluntary? Linguistically, it would seem that the two are mutually exclusive. If, indeed, a conviction for involuntary manslaughter required demonstrated proof that the killing was not voluntary, then findings that it was both involuntary and voluntary would, indeed, be inconsistent. Because, however, a finding of involuntary manslaughter may imply nothing more than the non-proof of voluntariness, simultaneous findings of both involuntariness and voluntariness would require no more than the merger of the lesser *mens rea* into the greater. *Cf. State v. Parker*, 128 Ariz. 107, 624 P.2d 304 (1980)." *Williams*, 100 Md. App. at 478.

I agree with this reasoning and disagree with the majority's position of focusing on the evidence contrary to the jury verdict rather than applying the correct standard of review. Because I agree with the Court of Appeals' treatment of the other issues it considered, I would affirm the conviction.

ROSEN, J., joins in the foregoing dissent.