NOT DESIGNATED FOR PUBLICATION

No. 115,697

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DEANDRE PANNELL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed November 9, 2017. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Andrew R. Davidson*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and SCHROEDER, JJ.

PER CURIAM: Deandre Pannell appeals his convictions for criminal threat and aggravated assault. Specifically, Pannell argues the case should be remanded for a new trial based on the district court's failure to provide a lesser included offense jury instruction on simple assault and the court's decision to include two mental states in the jury instructions on criminal threat. But a lesser included instruction on simple assault in this case would not have been proper because there was no evidence which would reasonably justify a conviction of the lesser crime. And because the State provided sufficient evidence to support a conviction under both mental states set forth in the

1

criminal threat instruction, the district court did not err by providing the instruction to the jury. For these reasons, we affirm Pannell's convictions.

FACTS

Julie Alexander and Pannell were in a long-term relationship. While in the relationship, they shared a 2001 white Chevy Blazer, which was owned by Julie. In 2013, the relationship began to deteriorate. On June 28, 2013, Pannell took Julie's Blazer without her permission. Julie filed a police report about the theft on the same day it happened.

On July 5, 2013, Julie and her sister Rachel got off work around 2 p.m. After leaving their place of employment, the two sisters drove the company van to pick up Rachel's husband, Phillip. Rachel was driving, Phillip was in the front passenger seat, and Julie was in the back passenger seat directly behind Rachel. While driving, Rachel noticed what she believed to be Julie's Blazer parked in front of a house on the street. After verifying that the Blazer was hers from the license plate, Julie called Pannell three times with no answer. Julie then called the nonemergency phone number for the police and asked them to come and help retrieve her keys from Pannell. While Julie was on the phone with the police, an unidentified male walked out of the house and got in the driver's seat of the Blazer. Rachel drove toward the Blazer and parked the van so that the Blazer was blocked in. As Julie was yelling at the person in the driver's seat to get out of her car, Pannell came running out of the house swinging a hatchet and screaming at Julie that he was going to kill her. After the unidentified man got out of the driver's seat of the Blazer, Pannell got in. Pannell shouted out a warning that if the van was not moved out of his way, he would smash into the van with the Blazer. Rachel moved the van. Pannell left in the Blazer while Rachel, Julie, and Phillip followed so that Julie could report Pannell's location to the police dispatcher, who was still on the line.

2

Pannell stopped in an alley, jumped out of the Blazer with the hatchet in hand, and walked back to the van, where he smashed the driver's side window while threating to kill Julie. Julie testified that Pannell smashed the window with the hatchet. Shards of glass cut Rachel on her arm, tongue, and thighs. Julie stated that Pannell attempted to open the door next to where she was sitting and that Rachel jumped out of the van to stop him. Julie testified that Pannell swung the hatchet and held it to Rachel's throat and told her that he would kill her. Pannell drove off once more and Julie, Rachel, and Phillip followed. Pannell then stopped the Blazer again, this time near a field. Rachel testified that Pannell came back toward the van again in a threatening manner before turning and walking into the adjacent field. The police arrived after Pannell left. Although police officers conducted a thorough search of the area around the Blazer, the adjacent field, and Pannell's person upon arrest, they did not find the keys to the Blazer or the hatchet.

The State charged Pannell with two counts of aggravated assault and one count of criminal damage to property. The State later amended its complaint adding one count of aggravated battery and two counts of criminal threat. Pannell pled not guilty. The jury ultimately acquitted Pannell of one count of aggravated assault and one count of aggravated battery but convicted him of one count of aggravated assault, one count of criminal damage to property, and two counts of criminal threat.

ANALYSIS

On appeal, Pannell claims the district court erred (1) by failing to give a lesser included offense instruction of simple assault in conjunction with the charge of aggravated assault and (2) by including two mental states within the jury instruction on both counts of criminal threat. We address each of Pannell's claims of error in turn.

3

1. *Lesser included instruction*

Pannell argues on appeal that the district court erred by not giving simple assault as a lesser included instruction of aggravated assault. Pannell acknowledges that he did not request this instruction below. Nevertheless, Pannell argues that the district court's failure to give the instruction resulted in clear error, requiring reversal of his conviction for aggravated assault.

When reviewing jury instruction challenges, appellate courts engage in a four-part analysis:

> "'(1) First, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the district court erred, the appellate court must determine whether the error was harmless, utilizing the test and degree of certainty set forth in *State v. Ward*, 292 Kan. 541, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).' [Citation omitted.]" *State v. Fisher*, 304 Kan. 242, 256-57, 373 P.3d 781 (2016).

Yet, when a defendant has failed to raise the jury instruction challenge below, like Pannell did here, the fourth part of the analysis changes. In such instances, the defendant must establish that the failure to give the complained-about instruction was clearly erroneous. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The defendant will not be entitled to reversal based upon clear error unless he or she "'firmly convince[s] the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

4

In this case, there is no real dispute about whether Pannell's argument is properly before this court under the clearly erroneous test or whether a simple assault instruction was legally appropriate. Therefore, we skip to the third part of the jury instruction challenge analysis concerning factual appropriateness.

"In cases where there is some evidence which would reasonably justify a conviction of some lesser included crime . . . the judge shall instruct the jury as to the crime charged and any such lesser included crime." K.S.A. 2016 Supp. 22-3414(3). The judge's duty to instruct applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. See *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014). Therefore, when evaluating whether a lesser included instruction is factually appropriate in an individual case, the standard of review is whether "after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found the defendant guilty of the lesser crime." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016). If we are so convinced, failure to give the lesser included instruction is error.

In Kansas, the offense of simple assault is defined by statute as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 2016 Supp. 21-5412(a). Relevant to the issue presented by Pannell on appeal, aggravated assault is simple assault committed with a deadly weapon. K.S.A. 2016 Supp. 21-5412(b)(1). Although charged with aggravated assault based on testimony that Pannell had a hatchet in his hand when committing the offense, Pannell argues a simple assault instruction was factually appropriate because there was evidence presented at trial from which the jury could have concluded that he did not have a hatchet. In support of his argument, Pannell highlights in his brief that "[d]uring closing argument, defense counsel explicitly argued that 'I submit to you the hatchet didn't exist.'"

5

But statements by counsel in closing argument do not qualify as evidence. And the fact that the police never recovered the hatchet is not sufficient to contradict or undermine the undisputed evidence presented at trial that Pannell possessed the hatchet when he committed the offenses. Julie testified that Pannell first came out of the house with the hatchet and had the hatchet later when he stopped the Blazer. Julie stated that the hatchet was 12 to 14 inches long with a blue-teal colored handle. Julie testified that Pannell smashed the window with the hatchet. In their testimony at trial, Rachel and Phillip both confirmed that Pannell had a hatchet. In the 911 recording, Julie told the dispatcher that Pannell had a hatchet.

As we stated above, the district court must instruct the jury on any lesser included offense where there is some evidence that would reasonably justify a conviction of the lesser included offense. K.S.A. 2016 Supp. 22-3414(3). The fact that the State did not find the hatchet is not sufficient evidence to reasonably justify a conviction of simple assault. After a review of all the evidence viewed in the light most favorable to the prosecution, we are not convinced that a rational fact-finder could have found the defendant guilty of simple assault. See *Fisher*, 304 Kan. at 258. As a result, the district court's failure to give the lesser included instruction was not error. In the absence of any error, there is no need to determine whether the error affected the trial's outcome.

2. *Alternative means*

Pannell also argues that the district court erred by including two different mental states in the jury instruction on both counts of criminal threat. Pannell was charged with two counts of criminal threat under K.S.A. 2016 Supp. 21-5415(a)(1). Under Kansas law, criminal threat is any threat to:

> "Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building,

6

place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities." K.S.A. 2016 Supp. 21-5415(a)(1).

The parties agree that criminal threat is an alternative means crime, at least with respect to the two mental state elements of intent to terrorize and a reckless disregard of the risk of causing terror. Our Supreme Court has reached the same conclusion. See *State v. Williams*, 303 Kan. 750, 760-61, 368 P.3d 1065 (2016) (applying rule of lenity to overcome ambiguity of statute to find Legislature created alternative means to commit criminal threat by listing two distinct mental state elements—intent to terrorize another and reckless disregard of risk of terrorizing another). When the district court instructs the jury on both alternative means to commit criminal threat, the State bears the burden of providing sufficient evidence to support each means to ensure that the jury verdict was unanimous. See 303 Kan. at 761.

In this case, the court based the criminal threat instruction on the standard PIK instruction, PIK Crim. 4th 54.370. The 2015 PIK instructions for criminal threat were:

> "To establish this charge, each of the following claims must be proved:
> 1.  The defendant threatened to *insert one of the following*:
>     *   commit violence and communicated the threat with intent to (place another in fear) . . .
>         or
>     *   commit violence and communicated the threat with reckless disregard of the risk of causing (fear in another) . . . ." PIK Crim. 4th 54.370 (2014 Supp.).

Contrary to the italicized directive, the judge did not choose "one of the following" as directed by the PIK instructions but instead instructed the jury that it could convict upon a finding of threat with intent to place another in fear or threat communicated with

7

reckless disregard of the risk of causing another to be placed in fear. Because the district court judge instructed the jury on both alternative means, the State must have provided sufficient evidence to support each means to commit the crime, both recklessness and intent, in order to sustain the convictions.

"A person acts 'intentionally,' or 'with intent,' . . . when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2016 Supp. 21-5202(h). "A person acts 'recklessly' . . . when such person consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2016 Supp. 21-5202(j). "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally." K.S.A. 2016 Supp. 21-5202(c).

For the purposes of criminal threat, Kansas caselaw "reflect[s] that: 'Someone who acts recklessly with respect to conveying a threat necessarily grasps that he [or she] is not engaged in innocent conduct. . . . He [or she] is aware that others could regard his [or her] statements as a threat, but he [or she] delivers them anyway.'" *State v. Boettger*, No. 115,387, 2017 WL 2709790, at *5 (Kan. App. 2017) (unpublished opinion) (quoting *Elonis v. United States*, 575 U.S. __, 135 S. Ct. 2001, 2015, 192 L. Ed. 2d 1 [2015]), *petition for rev. filed* July 24, 2017.

Viewing the evidence presented at Pannell's trial in the light most favorable to the State, we find sufficient evidence was presented for a reasonable jury to have convicted Pannell of criminal threat through either means: intent or recklessness. A jury certainly could find intent here that "[a] person acts 'intentionally,' or 'with intent,' . . . when it is such person's conscious objective or desire to engage in the conduct or cause the result." K.S.A. 2016 Supp. 21-5202(h). Viewing the evidence in the light most favorable to the

8

State, a reasonable jury could find that Pannell's conscious objective was to place Julie and Rachel in fear.

But Pannell argues that there is insufficient evidence to establish that he recklessly committed criminal threat. Kansas caselaw explains that someone acts recklessly with respect to conveying a threat when he is aware that others could regard his statements as a threat, but delivers them anyway. *Boettger*, 2017 WL 2709790, at *5. "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016).

Pannell cites *State v. O'Rear*, 293 Kan. 892, 903, 270 P.3d 1127 (2012), in which the Kansas Supreme Court reversed a defendant's conviction for aggravated battery after finding that the State failed to prove that the defendant acted recklessly. In *O'Rear*, the defendant was a security guard at a bank. The defendant was on duty when he saw a 60-year-old man with a cane, wearing a stocking cap and sunglasses, approach. Thinking the man had a pistol, O'Rear pulled out his pistol and shot the man in the torso. O'Rear testified at trial and admitted that he had the specific intent to shoot the man. O'Rear was convicted of reckless aggravated battery. On appeal, O'Rear argued that the State failed to present any evidence of reckless conduct, and the Kansas Supreme Court agreed. The court held that, where the defendant took the stand and admitted that his intent was to shoot the man, there was no evidence of reckless conduct, only intent. 293 Kan. at 903. The court stated—and Pannell cites in his brief—"[t]he mental state of recklessness is incompatible with a mental state where a person acts with knowledge, willfulness, or purposefulness, meaning a person cannot act both intentionally and recklessly with respect to the same act." 293 Kan. at 903.

9

The facts in this case, however, are significantly different from *O'Rear*. First, while the defendant in *O'Rear* took the stand and admitted that he intended to shoot the man, Pannell did not take the stand at trial or admit that he intended to threaten Julie or Rachel. Second, although there was no question in *O'Rear* that the defendant acted with intent because he admitted his mental state, there is at least a question as to Pannell's mental state. At trial, defense counsel did not speak to Pannell's mental state but merely argued that the threats "did not happen." In many cases, including the one here, there is no direct evidence of the defendant's mental state; the jury must rely on circumstantial evidence. See *State v. Thach*, 305 Kan. 72, 83-84, 378 P.3d 522 (2016). Given the facts presented at trial, it would be reasonable for the jury to conclude that Pannell did not deliver the threats with a conscious objective or desire to place Julie and Rachel in fear but instead made the threats without regard to whether his words placed Julie and Rachel in fear. Thus, we find sufficient evidence supported the convictions in Count V and Count VI based on both an intentional threat and one made recklessly. Because sufficient evidence supported each alternative mental state, we affirm Williams' convictions for criminal threat.

Affirmed.