NOT DESIGNATED FOR PUBLICATION

No. 119,981

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRADLEY M. TREFETHEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed April 16, 2021. Affirmed.

*James M. Latta*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., HILL and WARNER, JJ.

BUSER, J.: Bradley M. Trefethen appeals his conviction for reckless aggravated battery in violation of K.S.A. 2016 Supp. 21-5413(b)(2)(A). Trefethen raises several issues on appeal. First, he contends insufficient evidence supports his conviction because the State failed to prove that he unintentionally committed an act causing great bodily harm. Second, Trefethen contends that a jury instruction stating that proof of a higher culpable mental state proves a lesser mental state unconstitutionally relieved the State of its burden to prove that he acted recklessly. Third, he asserts the district court committed additional instances of clear error when instructing the jury on lesser included offenses

1

and bodily harm and by failing to instruct on the definition of intentional conduct. Finally, Trefethen claims that reckless aggravated battery is a logical impossibility and, as a result, is not a valid crime in Kansas.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2016, Trefethen and A.N. moved in together after dating for about a month. A.N.'s two sons lived with the couple and Trefethen's daughter occasionally stayed with them. A.N.'s youngest son, J.N., slept in a crib located in the couple's bedroom. When the couple first moved in together, A.N.'s father had watched the kids while the couple worked. But in September 2016, Trefethen sustained an injury to his shoulder and was disabled from work. As a result, Trefethen began watching the children while A.N. was at work.

On October 8, 2016, J.N., who was 16 months old at the time, had not been feeling well due to an eye infection. At about 1:30 p.m., A.N. checked on Trefethen and the children before leaving for work. When A.N. left, J.N. was lying on the loveseat next to Trefethen and was starting to fall asleep. At 3:27 p.m., A.N. texted Trefethen and asked how everything was going at the residence. Trefethen responded by text 13 minutes later:

> "I just got [J.N.] to stop crying. I don[']t think he'll try [to] climb out of the crib again. I heard a boom [and] then crying right after. Came into the room [and] he had his right foot caught between the bars of the crib [and] I wasn't sure what he hit. I checked his head [but] didn't feel any knots but his lips are a [little] puffy, [p]robably from biting them when he fell."

After this explanation, Trefethen texted that he tried to get J.N. to stand and walk, but the child would not keep his legs straight and would just sit down. A.N. asked whether she needed to come home. Trefethen replied that he was not sure and deferred to her judgment. A.N. came home to assess the situation.

2

Once home, A.N. inspected J.N.'s legs and saw no swelling or bruising but she noticed that J.N. would cry every time she tried to move him. A.N. decided to take J.N. to the hospital. At the hospital, diagnostic tests revealed that J.N. had sustained fractures to his tibias and fibulas in both legs near his ankles. As a consequence, both of J.N.'s legs were placed in casts for about six weeks.

While at the hospital, emergency room physicians called Doctor Katherine Melhorn to examine J.N. because they believed his injuries were the result of child abuse. Doctor Melhorn—a certified pediatrician and child abuse specialist—assessed J.N. and noted that he was upset and in obvious pain. In addition to the leg fractures, Doctor Melhorn noticed that J.N. had numerous bruises on his body, a swollen right eye, and some swelling and abrasions to his mouth.

Doctor Melhorn spoke with A.N., who provided Trefethen's explanation that J.N. had crawled out of his crib, got his foot stuck, and was found hanging upside down from the crib. Doctor Melhorn believed that J.N.'s injuries were inconsistent with Trefethen's explanation. Instead, in Doctor Melhorn's opinion, J.N.'s injuries were indicative of child abuse, and the leg fractures were the result of the child's legs being grabbed and forcefully broken. Doctor Melhorn also concluded that J.N.'s other injuries showed inflicted trauma, noting that his ear bruises indicated he was slapped on the head, his mouth injuries were consistent with being slapped or punched in the mouth, and other bruises were located in areas where accidental bruises do not usually occur.

Detective Dan Ribble, assigned to the Exploited and Missing Child Unit, was dispatched to the hospital to investigate J.N.'s injuries. A.N. told Detective Ribble about Trefethen's explanation that J.N. fell out of the crib and his right leg became stuck between the crib slats. On the other hand, Doctor Melhorn told Detective Ribble that J.N.'s leg injuries were not consistent with falling out of a crib or any twisting motion. Instead, Doctor Melhorn explained that J.N.'s leg fractures were either caused by

3

someone directly applying force until the legs snapped or by grabbing his legs near the location of the fractures and pulling up in a forceful manner.

After obtaining this information, Detective Ribble interviewed Trefethen. During a recorded interview, Trefethen initially recounted that he was watching television when he heard a thud and found J.N. with his right foot stuck in the crib slats. Detective Ribble confronted Trefethen, however, with Doctor Melhorn's expert opinion that the crib did not cause J.N.'s injuries. When the detective pressed Trefethen to admit how J.N. broke his legs, Trefethen stated that J.N. would not stop screaming after he fell out of the crib, so he grabbed J.N. by the bottom of his legs and yanked him up to make him laugh. Trefethen explained that although he was frustrated at the time, he intended to make J.N. laugh and "wasn't trying to hurt him at all."

Detective Ribble had Trefethen demonstrate on a doll how he pulled up on J.N.'s legs. Trefethen reenacted standing over J.N., grabbing him just above the ankles, and jerking him into the air about head high. Trefethen described feeling a popping sensation in his hands when he jerked up. He agreed that his action of yanking J.N. into the air was what likely broke his legs, described his actions as a dumb way of trying to stop the child's crying, and admitted that he "lost control for a moment." But Trefethen repeatedly explained that he "didn't mean to" break J.N.'s legs. Trefethen also denied causing any of the bruises on J.N.'s body.

The State charged Trefethen with severity level 4 aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(A), for knowingly causing great bodily harm or disfigurement to J.N. The State also charged Trefethen with abuse of a child.

At trial, A.N. testified that on October 8, 2016, she left work and came home after Trefethen texted her that J.N. had fallen out of his crib and may be injured. A.N. recounted Trefethen's explanation that he was watching television when he heard a thud

4

followed by crying and went into the bedroom where he saw J.N. on the floor with his right leg stuck between the crib slats. A.N. was not surprised that J.N. had fallen out of the crib because J.N. had been seen climbing on the crib and A.N. had previously expressed her concern that he would "end up climbing out and breaking something."

After A.N. took J.N. to the hospital, she learned that J.N. sustained fractures to both legs near his ankles. J.N. was admitted to the hospital for four days and his legs were placed in casts. As a result of J.N.'s injuries, A.N. took a year off from work to care for her son.

At trial, Doctor Melhorn testified regarding her observations of J.N.'s leg injuries, noting that the fractures were "[n]ot at all" consistent with Trefethen's explanation that the injuries occurred when J.N. fell out of the crib. Because all four of the bones were broken in the same area, Doctor Melhorn opined that the fractures were the result of inflicted trauma that required "a mechanism where probably those legs were grabbed and forcefully broken, in the absence of some other explanation that could explain all of that together." Doctor Melhorn testified that it was impossible that J.N. sustained his leg fractures by falling out of a crib and getting his leg stuck. However, Doctor Melhorn testified that Trefethen's explanation that he grabbed J.N. above the ankles and forcefully jerked up was consistent with the injuries the child sustained.

Detective Ribble testified regarding his recorded interview with Trefethen, which was played for the jury. Detective Ribble recounted Trefethen's initial explanation that J.N. injured his leg when he fell out of the crib and got his foot stuck in the crib slats. But Detective Ribble also testified to Trefethen's later admission that he "grabbed [J.N] by the bottoms of his legs and yanked him up, in an attempt to get him to laugh."

Trefethen testified in his own defense, claiming that his statement to Detective Ribble about pulling J.N. up by the ankles was untrue. Instead, Trefethen explained that

he heard a thud in the bedroom, found J.N. with his right foot stuck in the crib slats, freed J.N.'s leg from the crib, and texted A.N. about the incident. Trefethen denied grabbing J.N. by the ankles at any time during the day.

At the close of evidence, the district court instructed the jury on the charged offenses and four lesser included offenses of severity level 4 aggravated battery: (1) severity level 5 reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A); (2) severity level 7 knowing aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(B); (3) severity level 8 reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(B); and (4) simple battery under K.S.A. 2016 Supp. 21-5413(a)(1).

The jury found Trefethen guilty of the lesser included offense of severity level 5 reckless aggravated battery for causing great bodily harm to J.N. He was acquitted of child abuse. The district court sentenced Trefethen to 32 months in prison. He appeals.

SUFFICIENCY OF EVIDENCE TO PROVE RECKLESS AGGRAVATED BATTERY

Trefethen contends there was insufficient evidence presented at trial to support his conviction for reckless aggravated battery. He asserts that because there was no evidence "tending to prove that [he] unintentionally or unknowingly grabbed [J.N] by the legs," there was insufficient evidence for the jury to reasonably conclude he acted recklessly. The State counters that "reckless crimes may involve deliberate acts . . . intentional or knowing acts, and what makes the crime reckless is a conscious disregard of a substantial and unjustifiable risk that a *result* of the defendant's actions will follow."

We begin with a summary of our standards of review and Kansas law relating to sufficiency of evidence claims. When the sufficiency of evidence is challenged in a criminal case, our court reviews all evidence in the light most favorable to the State. *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). The conviction will be upheld if

6

the court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt based on that evidence. 307 Kan. at 668. In determining whether there is sufficient evidence to support a conviction, an appellate court generally will not reweigh the evidence or reassess witness credibility. 307 Kan. at 668. Lastly, a verdict may be supported by circumstantial evidence if that evidence provides a basis for a reasonable inference by the fact-finder on the fact in issue. To be sufficient, circumstantial evidence need not exclude every other reasonable conclusion. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

To the extent this issue involves questions of statutory interpretation, our court exercises unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. LaPointe*, 309 Kan. 299, 314, 434 P.3d 850 (2019). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019). When construing statutes, appellate courts must consider various provisions of an act *in pari materia* with reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, 573-74, 357 P.3d 251 (2015). Mindful of these legal precepts, we will analyze the merits of the issue.

The State charged Trefethen with severity level 4 aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(A) for knowingly causing great bodily harm or disfigurement to J.N. The jury convicted Trefethen, however, of the lesser included offense of reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A), which defines the crime as "recklessly causing great bodily harm to another person or disfigurement of another person." By Kansas statute, a person acts "recklessly" if that person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will

7

follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." K.S.A. 2020 Supp. 21-5202(j).

In contrast to the statutory definition of "recklessly," the statutory definition of "knowingly" provides:

> "A person acts 'knowingly,' or 'with knowledge,' with respect to the nature of such person's conduct or to circumstances surrounding such person's conduct when such person is aware of the nature of such person's conduct or that the circumstances exist. A person acts 'knowingly,' or 'with knowledge,' with respect to a result of such person's conduct when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 2020 Supp. 21-5202(i).

Of note, the definitions of recklessly and knowingly provide that the state of mind may apply to the existence of circumstances or the result that follows the person's actions.

Citing our Supreme Court's distinction between reckless and intentional acts in *State v. O'Rear*, 293 Kan. 892, 270 P.3d 1127 (2012), Trefethen argues that the State failed to prove that he acted recklessly because "[a]ll of the State's evidence showed that Trefethen acted either intentionally or knowingly when he pulled [J.N.] up by the legs." Trefethen explains that

> "the State's evidence tended to prove that Trefethen deliberately grabbed [J.N.] either with the conscious objective to cause the resulting injury, equating to an intentional mental state, or with the understanding that such an injury could result from the purposeful act, amounting to a knowing mental state. At no point during the trial does the State present evidence that Trefethen recklessly seized [J.N.] by the legs."

8

Trefethen asserts the State was required to prove that he unintentionally grabbed J.N.'s legs because "the *act* causing the harm must be committed unintentionally to constitute reckless battery." (Emphasis added.)

Trefethen's reliance on *O'Rear* is misplaced. In *O'Rear*, our Supreme Court reversed the defendant's conviction of aggravated battery after finding that the State failed to prove he acted recklessly. 293 Kan. at 903. But the facts in *O'Rear* are materially different than in this case. In *O'Rear*, the defendant—a bank security guard— shot an innocent bank patron in the torso after he mistakenly believed the man had a firearm. The undisputed evidence showed that O'Rear intended to shoot the man in his center mass to disable him and render him unable to exchange gunfire. The jury found O'Rear guilty of the charged crime of reckless aggravated battery and O'Rear appealed.

On appeal, our Supreme Court reversed O'Rear's conviction, finding that insufficient evidence supported the jury's finding that O'Rear acted recklessly. 293 Kan. at 903. The Supreme Court determined the evidence showed only that O'Rear "intended to shoot [the victim] in center mass," which necessarily meant that "he intended to cause great bodily harm." 293 Kan. at 903. The Supreme Court observed that while O'Rear's reasons for shooting the victim may have been the result of misperceptions, his intention to cause great bodily harm remained. The Supreme Court concluded: "The mental state of recklessness is incompatible with a mental state where a person acts with knowledge, willfulness, or purposefulness, meaning a person cannot act both intentionally and recklessly with respect to the same act." 293 Kan. at 903. Since the evidence only showed that O'Rear intentionally caused the victim's injury, the State failed to establish that he recklessly caused great bodily harm.

Unlike the defendant's obvious intent to cause great bodily harm in *O'Rear*, one of Trefethen's accounts of the incident recorded by Detective Ribble was that he unintentionally harmed J.N. by lifting him up by his legs to make him laugh. By his own

9

account, Trefethen grabbed J.N.'s legs and pulled up without any conscious objective to cause the resulting injury but to simply make the child happy. Under the circumstances, the jury could evaluate Trefethen's actions and conclude that while he did not intend to harm the child, he consciously disregarded a substantial and unjustifiable risk that the result of his actions would cause great bodily harm or disfigurement to J.N.

The evidence of Trefethen's actions and his claimed lack of intent to cause harm is more factually similar to *State v. Ochoa*, 20 Kan. App. 2d 1014, 1020-21, 895 P.2d 198 (1995), *disapproved of on other grounds by State v. Valentine*, 260 Kan. 431, 921 P.2d 770 (1996), where our court determined that reckless battery instructions were warranted when the defendant shot three individuals because the defendant testified that he did not intend to shoot anyone; he merely shot in the air to frighten others.

Trefethen claims that the crime of reckless aggravated battery requires the *act* causing the harm to be committed unintentionally. However, such an interpretation is not supported by relevant statutory provisions nor the caselaw interpreting those statutes. K.S.A. 2016 Supp. 21-5413(b)(2)(A) prohibits "recklessly causing great bodily harm . . . or disfigurement of another person," not recklessly engaging *in an act* that causes great bodily harm or disfigurement. And a person acts recklessly by consciously disregarding a substantial and unjustifiable risk that "circumstances exist *or that a result will follow*." (Emphasis added.) K.S.A. 2020 Supp. 21-5202(j). As a result, reckless aggravated battery may be committed by consciously disregarding a substantial and unjustifiable risk that the result of one's actions would cause great bodily harm or disfigurement to another person.

In a related context, our Supreme Court's discussion of reckless second-degree murder in *State v. James*, 309 Kan. 1280, 1297, 443 P.3d 1063 (2019), also refutes Trefethen's contention that reckless aggravated battery requires an unintentional act that causes harm. Reckless second-degree murder requires "the killing of a human being

10

committed . . . *unintentionally but recklessly* under circumstances manifesting extreme indifference to the value of human life." (Emphasis added.) K.S.A. 2020 Supp. 21-5403(a)(2). In *James*, the district court refused to instruct on reckless second-degree murder. It determined that the instruction was factually inappropriate because James testified that he shot his firearm in self-defense but did not fire specifically at anyone. The district court concluded that because James acted intentionally when shooting the gun, he did not act recklessly.

Our Supreme Court disagreed. It determined the district court erred by refusing to instruct on reckless second-degree murder because James' testimony was that he did not intend to kill the victim. 309 Kan. at 1299-1300. The Supreme Court explained that "'blind conduct, while one form of reckless conduct, is not the only type of conduct that can be reckless; *even an intentional blow can result in an unintentional but reckless killing*.'" (Emphasis added.) 309 Kan. at 1299 (quoting *State v. Deal*, 293 Kan. 872, 882, 269 P.3d 1282 [2012]). Our Supreme Court emphasized that the difference between intentional and reckless second-degree murder is the intent to kill, not the intent to inflict a blow, because the statutory language "'requires the killing—*the result*—to be either intentional or unintentional.'" 309 Kan. at 1299 (quoting *Deal*, 293 Kan. at 883).

Similar to our Kansas second-degree murder statute, the difference between reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A) and knowing aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(A) is the mental state in causing the result of great bodily harm or disfigurement, *not* whether the defendant intentionally committed the act that caused the harm or disfigurement. Accordingly, a defendant may recklessly cause great bodily harm or disfigurement to another person even when the defendant intentionally or knowingly performed the act that caused the injury. See *State v. Louis*, 305 Kan. 453, 461, 384 P.3d 1 (2016) (noting that recklessness requires voluntary conduct). So the evidence that, by his own account, Trefethen intended the underlying action of lifting J.N. by the legs does not mean the State failed to prove

11

that he committed reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A).

Our Supreme Court's interpretation of knowing aggravated battery also supports the finding that reckless aggravated battery may include a deliberate act. In *State v. Hobbs*, 301 Kan. 203, 210, 340 P.3d 1179 (2015), the court found that the only actus reus included in knowing aggravated battery under K.S.A. 2011 Supp. 21-5413(b)(1)(A) was "'causing great bodily harm to another person or disfigurement of another person.'" The court then noted that the definition of knowingly applied to "both the nature of a person's conduct and the result of a person's conduct." 301 Kan. at 210. Considering the relevant statutes *in pari materia*, the court held that a knowing aggravated battery requires the State to prove the defendant acted while knowing some type of great bodily harm or disfigurement was reasonably certain to occur from the act:

> "'knowingly,' as used in K.S.A. 2011 Supp. 21-5413(b)(1)(A), means that the accused acted when he or she was aware that his or her conduct was reasonably certain to cause the result. This does not mean that the accused must have foreseen the specific harm that resulted. Instead, it is sufficient that he or she acted while knowing that any great bodily harm or disfigurement of the victim was reasonably certain to result from the action." 301 Kan. at 211.

Like the knowing aggravated battery provision examined in *Hobbs*, the only actus reus included in reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A) is recklessly causing great bodily harm or disfigurement of another person. "It matters not how this is achieved." *Hobbs*, 301 Kan. at 210. What separates knowing aggravated battery from reckless aggravated battery is the degree of awareness that an individual's actions will cause great bodily harm or disfigurement, not whether the individual's underlying action was deliberate. Knowing aggravated battery requires the defendant to act while knowing some great bodily harm or disfigurement was reasonably certain to result from the act. 301 Kan. at 212. Reckless aggravated battery includes acting while

12

consciously disregarding a substantial and unjustifiable risk that great bodily harm or disfigurement would result from the act, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in that situation.

Having found that reckless aggravated battery may be committed by a deliberate act, sufficient evidence supports Trefethen's conviction. The State produced evidence from Trefethen's recorded interview that he became frustrated after J.N. fell out of his crib and would not stop crying. Trefethen admitted that he grabbed J.N. by the bottom of his legs and yanked him up with enough force that he felt J.N.'s legs pop in his hands. While Trefethen later characterized his actions as a bad idea, he explained that at the time he wanted to make J.N. laugh and had no intention to hurt J.N. or break his legs. Accepting Trefethen's admissions during his interview as true, a rational jury could conclude beyond a reasonable doubt that he consciously disregarded a substantial and unjustifiable risk, amounting to a gross deviation from a reasonable standard of care, that great bodily harm would occur given the tender years of the child, the locations where Trefethen grabbed J.N.'s legs, and the amount of force used to thrust the child in the air.

The fact that Trefethen deliberately pulled J.N. up by the legs is not determinative of whether he recklessly caused great bodily harm. Instead, what separates knowing aggravated battery from reckless aggravated battery is the defendant's appreciation of the likely consequences of his or her actions. In this case—taking Trefethen at his word—and considering the evidence in the light most favorable to the State, Trefethen committed reckless aggravated battery because he would not have reasonably attempted to make J.N. laugh if he were aware that some type of great bodily harm or disfigurement were reasonably certain to occur from his actions. On the other hand, the trial evidence did indicate that Trefethen's actions showed a conscious disregard of a substantial and unjustifiable risk that great bodily harm or disfigurement would result from the actions, and such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in that situation.

13

We are convinced the State presented sufficient evidence at trial to support Trefethen's conviction for reckless aggravated battery.

JURY INSTRUCTION ON CULPABLE MENTAL STATES

Next, Trefethen contends the instruction informing the jury that proof of a higher culpable mental state proves a lesser mental state was clearly erroneous. As mentioned earlier, the district court instructed the jury on the charged offense of severity level 4 aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(1)(A) for knowingly causing great bodily harm or disfigurement to J.N. Additionally, the district court instructed the jury on four lesser included offenses, including severity level 5 reckless aggravated battery under K.S.A. 2016 Supp. 21-5413(b)(2)(A). Importantly, Trefethen did not object to the instructions submitted by the district court to the jury and requested no additional instructions.

For the first time on appeal, the "mental states" jury instruction Trefethen now objects to provided:

"If the State has proved that the defendant acted intentionally, then the State has proved as well that the defendant acted knowingly.
"If the State has proved that the defendant acted intentionally or knowingly, then the State has proved as well that the defendant acted recklessly."

Other jury instructions contained definitions of knowing and reckless conduct but did not define intentional conduct. Trefethen claims the mental states instruction created a mandatory presumption that unconstitutionally relieved the State of its burden to prove the element of recklessness.

At the outset, we pause to note that Trefethen's constitutional argument is really an attack on K.S.A. 2020 Supp. 21-5202(c), the Kansas statute relating to mental states in

14

criminal law, not simply a claim of instructional error. Constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. Because this issue is capable of resolution as an instructional matter, however, we will analyze Trefethen's claim.

When reviewing jury instruction issues, our court determines (1) whether the issue was preserved for appellate review; (2) whether the instruction was legally and factually appropriate; and (3) whether any error was harmless. *State v. Barrett*, 309 Kan. 1029, 1036-37, 442 P.3d 492 (2019). Whether a party preserved the jury instruction issue affects the reversibility inquiry at the third step. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Since Trefethen did not object to the jury instruction at issue, our court evaluates this claim under the clearly erroneous standard. K.S.A. 2020 Supp. 22-3414(3). An instruction is clearly erroneous only if the defendant firmly convinces the appellate court that the jury would have returned a different verdict if the instructional error had not occurred. 307 Kan. at 318.

As Trefethen argues, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that each element of a crime be proven beyond a reasonable doubt. *Yates v. Aiken*, 484 U.S. 211, 214, 108 S. Ct. 534, 98 L. Ed. 2d 546 (1988). Under this constitutional principle, evidentiary presumptions may not be included in the jury instructions if they have the effect of relieving the State of its burden of proof beyond a reasonable doubt of every essential element of a crime. *Francis v. Franklin*, 471 U.S. 307, 313, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985).

When determining whether a jury instruction relieves the State of its burden of proof, courts first determine whether the challenged instruction creates a mandatory presumption or merely a permissive inference. 471 U.S. at 313-14. A mandatory presumption instructs the jury that it must infer a fact if the State proves certain predicate facts, and a permissive inference suggests but does not require the jury to draw a possible

15

conclusion if the State proves predicate facts. 471 U.S. at 314. If the challenged instruction creates a mandatory presumption, it violates the Due Process Clause if it relieves the State of its burden of persuasion on an essential element of the offense. A permissive inference violates the Due Process Clause only if the suggested conclusion is not one that is justified by reason and common sense. 471 U.S. at 314-15.

The jury instruction that Trefethen challenges is a mirror image of the pattern jury instructions for Kansas PIK Crim. 4th 52.020 (2019 Supp.). Our Supreme Court strongly recommends using the PIK instructions, which are developed by knowledgeable committees to bring accuracy, clarity, and uniformity to instructions. *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). The instruction is also consonant with both K.S.A. 2020 Supp. 21-5202(c) and the U.L.A. Model Penal Code § 2.02(5).

The Model Penal Code provides: "When recklessness suffices to establish an element, such element also is established if a person acts purposely or knowingly. When acting knowingly suffices to establish an element, such element also is established if a person acts purposely." Model Penal Code § 2.02(5). Additionally, K.S.A. 2020 Supp. 21-5202(c) states:

> "Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged. If recklessness suffices to establish an element, that element also is established if a person acts knowingly or intentionally. If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally."

PIK Crim. 4th 52.020 accurately reflects that under K.S.A. 2020 Supp. 21-5202(c), "the State can establish that a defendant acted recklessly if it proves that the defendant acted knowingly or intentionally." *State v. Gentry*, 310 Kan. 715, 733, 449 P.3d 429 (2019). As a result, K.S.A. 2020 Supp. 21-5202(c) makes "it *legally possible* for

16

a person to be guilty of a reckless act by knowingly or intentionally committing that same act." *State v. Chavez*, 310 Kan. 421, 428, 447 P.3d 364 (2019).

In this case, the instruction at issue created a mandatory presumption because it instructs the jury that it must infer the defendant acted recklessly if the State proves the defendant acted intentionally or knowingly. Contrary to Trefethen's assertion, however, the instruction did not violate the Due Process Clause because it did not relieve the State of its burden to prove that Trefethen recklessly caused great bodily harm.

The addition of K.S.A. 2020 Supp. 21-5202(c) was part of the 2011 recodification of the Kansas criminal statutes and established that reckless conduct is proven if a person acts knowingly or intentionally. L. 2010, ch. 136, § 13. Following the 2011 recodification, the requisite mental states in our criminal code focus on the defendant's appreciation of the likely consequences of his or her actions, not on the voluntariness or character of the actions. See *State v. Ochoa*, No. 118,364, 2018 WL 5091856, at *16 (Kan. App. 2018) (unpublished opinion) (Atcheson, J., concurring).

As the State explains, Kansas' culpable mental states are now on a sliding scale and are used to evaluate a defendant's criminal state of mind and assign punishment based on the level of mental culpability proven. See K.S.A. 2020 Supp. 21-5202(b) (noting that "[c]ulpable mental states are classified according to relative degrees"). While knowledge and intent require a consciousness of almost certainty in causing a result, recklessness requires a consciousness of something far less than certainty and exists when one is aware that his or her conduct might cause the result. 1 LaFave, Substantive Criminal Law, § 5.4(f) (3d ed. 2020). As a result, conduct designed to produce a result and conduct the defendant knows is reasonably certain to cause a result is "now sufficient to establish the defendant acted recklessly." *Louis*, 305 Kan. at 462. "It is thus quite logical to provide, as does Model Penal Code § 2.02(5), that when recklessness suffices to establish an element of a crime, 'such element is also established if a person acts

17

purposely or knowingly.'" 1 LaFave, Substantive Criminal Law, § 5.4(f) n.47 (3d ed. 2020).

Since the State necessarily proves a defendant acts recklessly when it proves the defendant acts knowingly or intentionally, the jury instruction did not relieve the State of its burden to prove that Trefethen acted recklessly. Instead, the instruction properly reprised Kansas law and correctly informed the jury that if the State proves a higher culpable mental state than required for an offense, then the lower culpable mental state is necessarily shown. As a result, Trefethen fails to show that the instruction on culpable mental states contained in PIK Crim. 4th 52.020 was clearly erroneous for dispensing with the State's requirement to prove every element of the crime.

FOUR ADDITIONAL JURY INSTRUCTIONS

Next, Trefethen contends the district court committed four additional instances of clear error when instructing the jury by: (1) not restricting the culpable mental states instruction to only the charged crimes; (2) instructing on the lesser included offense of reckless aggravated battery when there was no factual basis for the crime; (3) giving a definition of bodily harm incompatible with reckless conduct; and (4) failing to define the term "intentional."

As previously discussed, our court reviews jury instruction challenges by determining (1) whether the issue was preserved; (2) whether the instruction was legally and factually appropriate; and (3) whether any error was harmless. *Barrett*, 309 Kan. at 1036-37. Trefethen candidly concedes that he failed to object to any of the four purportedly improper instructions or that he submitted his own instructions instead of the ones he now claims are erroneous. Accordingly, our court applies the clearly erroneous standard to determine whether any instructional error requires reversal. K.S.A. 2020 Supp. 22-3414(3). To establish clear error, Trefethen must firmly convince our court that

18

the jury would have returned a different verdict if the instructional error had not occurred. *McLinn*, 307 Kan. at 318.

*Applying the Culpable Mental States Instruction to Lesser Included Offenses*

Trefethen asserts the district court erred by failing to limit the culpable mental states instruction discussed in the previous section to the crime charged. He claims that the application of this instruction to lesser included crimes inaccurately stated the law as set forth in K.S.A. 2020 Supp. 21-5202(c), because the statute provides that the concept of proving a higher culpable mental state also proves a lesser state is limited to the crime charged.

To determine whether the district court erred, our court examines whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *McLinn*, 307 Kan. at 318. For an instruction to be legally appropriate, the instruction must fairly and accurately state the law. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

As discussed earlier, the district court instructed the jury: "If the State has proved that the defendant acted intentionally, then the State has proved as well that the defendant acted knowingly. If the State has proved that the defendant acted intentionally or knowingly, then the State has proved as well that the defendant acted recklessly." This provision was contained in the instructions informing the jury that the offense of knowing aggravated battery included lesser offenses. As a result, the State appropriately acknowledges that the instructions allowed the jury to apply the challenged provision to the lesser included offenses.

As Trefethen points out, K.S.A. 2020 Supp. 21-5202(c) states that "[p]roof of a higher degree of culpability *than that charged* constitutes proof of the culpability

19

*charged*." (Emphasis added.) Our court has previously found that this subsection does not apply to lesser included offenses because the plain language states it only applies to crimes charged. *State v. Younger*, No. 116,441, 2018 WL 911414, at *19 (Kan. App. 2018) (unpublished opinion); also see *State v. Green*, 55 Kan. App. 2d 595, 614, 419 P.3d 83 (2018) (holding that K.S.A. 2017 Supp. 21-5202(c) does not require instructions on every lesser included offense with a lower culpable mental state), *rev. denied* 309 Kan. 1351 (2019). But our Supreme Court has since addressed our court's interpretation of K.S.A. 2020 Supp. 21-5202(c) in these cases and expressly left open the question of how the subsection applies to lesser included offenses. *State v. Perez-Medina*, 310 Kan. 525, 538, 448 P.3d 446 (2019).

Given the jury's verdict in this case, however, the proper application of this statutory language is not dispositive. Assuming the district court erred by extending the culpable mental states instruction under PIK Crim. 4th 52.020 to lesser included offenses, Trefethen fails to show that the jury would have returned a different verdict if the supposed instructional error had not occurred. That is because the jury could only consider the lesser included offense of reckless aggravated battery if it did not agree that Trefethen was guilty of knowing aggravated battery. And the only difference between reckless aggravated battery and knowing aggravated battery was whether Trefethen knowingly or recklessly caused great bodily harm to J.N. As a result, the jury by its verdict necessarily determined that Trefethen recklessly caused great bodily harm but did not intentionally or knowingly cause great bodily harm. Since the jury determined that Trefethen did not act intentionally or knowingly, the challenged instruction was not applicable and could not have contributed to the jury's verdict.

Trefethen fails to show the district court committed clear error by failing to limit the culpable mental states instruction to the crime charged.

*Instruction on the Lesser Included Offense of Reckless Aggravated Battery*

Trefethen also claims the district court committed clear error by instructing on reckless aggravated battery because there was no factual basis for the instruction.

A district court is duty-bound to instruct on a lesser included offense if there is some evidence that reasonably justifies a conviction of the lesser included offense. K.S.A. 2020 Supp. 22-3414(3). Since reckless aggravated battery under K.S.A. 2020 Supp. 21-5413(b)(2)(A) is a lesser included offense of knowing aggravated battery under K.S.A. 2020 Supp. 21-5413(b)(1)(A), the instruction on reckless aggravated battery was legally appropriate. *Perez-Medina*, 310 Kan. at 535. As a result, the district court was required to instruct on reckless aggravated battery if there was some evidence, when viewed in the light most favorable to the defendant, that would allow a rational fact-finder to find Trefethen guilty of reckless aggravated battery. See *McLinn*, 307 Kan. at 325.

Reprising his sufficiency of evidence claim discussed earlier, Trefethen argues that an instruction on reckless aggravated battery was factually inappropriate because no evidence suggested he acted intentionally when breaking J.N.'s legs. In support of his assertion, Trefethen cites *Green*, 55 Kan. App. 2d 595.

As previously discussed, reckless aggravated battery does not require an offender to unintentionally commit the act causing the harm. Instead, a person commits reckless aggravated battery by consciously disregarding a substantial and unjustifiable risk, amounting to a gross deviation from a reasonable standard of care, that great bodily harm or disfigurement would result from one's act, regardless of whether one intended to perform the underlying act. The difference between reckless aggravated battery and knowing aggravated battery is the defendant's awareness that the resulting harm would

21

occur from an act, not whether the defendant was aware he or she was committing the act.

Trefethen's reliance on *Green* is mistaken. In *Green*, our court determined that a lesser included instruction on reckless aggravated battery was not factually appropriate when the evidence showed that, during an argument, Green knocked the victim unconscious by striking him in the face with a whiskey bottle while holding a knife. 55 Kan. App. 2d at 616. Since Green argued that he acted in self-defense, our court determined that "the jury was left with the options of finding that Green knowingly committed aggravated battery, acted in self-defense, or committed simple battery." 55 Kan. App. 2d at 616.

Unlike Trefethen's actions of lifting J.N. by the legs just to make him laugh, the defendant's actions in *Green* of intentionally hitting the victim in the face with a whiskey bottle demonstrated that he intended the result of his actions. Similar to *Green*, the defendants' actions in our court's unpublished cases that Trefethen cites also revealed the defendants' intent or knowledge that their actions would cause the type of result inflicted. *State v. Zapata-Grimaldo*, No. 117,831, 2018 WL 6071478, at *8 (Kan. App. 2018) (unpublished opinion) (strangling victim until she lost consciousness); *State v. Brownfield*, No. 115,667, 2017 WL 3668877, at *5 (Kan. App. 2017) (unpublished opinion) (punching victim's head until unconscious with intent to "'beat the [expletive] out of him'"); *State v. Davis*, No. 115,566, 2017 WL 3324693, at *4 (Kan. App. 2017) (unpublished opinion) (throwing ceramic tea container during argument to harm ex-girlfriend); *State v. Castro*, No. 111,981, 2016 WL 97849, at *8 (Kan. App. 2016) (unpublished opinion) (repeatedly shooting victim at close range during home break-in).

In this case, there was evidence that allowed a rational fact-finder to find Trefethen guilty of reckless aggravated battery but innocent of knowing aggravated battery. The State provided evidence that Trefethen grabbed J.N. near his ankles and

yanked with enough force to fracture the child's legs. While Trefethen deliberately lifted J.N. by the legs, he was adamant during the interview that he was attempting to make the child laugh and did not intend to hurt him. Based on this evidence, a rational jury could conclude that Trefethen consciously disregarded a substantial and unjustifiable risk that great bodily harm would result from his actions, and his disregard constituted a gross deviation from a reasonable standard of care. Moreover, the jury could rationally make this conclusion without finding that Trefethen was reasonably certain that his conduct would create some type of great bodily harm.

A lesser included instruction on reckless aggravated battery was legally and factually appropriate. Accordingly, the district court did not err by instructing the jury on reckless aggravated battery as a lesser included offense.

*Instruction on the Definition of Bodily Harm*

For his next claim of error, Trefethen argues that the district court committed clear error when instructing the jury on the definition of bodily harm. He claims the instruction, in combination with the reckless aggravated battery instructions, inaccurately stated the law. Our court exercises unlimited review to determine whether jury instructions are legally appropriate. *McLinn*, 307 Kan. at 318. To be legally appropriate, the instructions must fairly and accurately state the law. *Plummer*, 295 Kan. at 161.

The district court instructed the jury that bodily harm is defined as "any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner." Trefethen claims this instruction does not legally coexist with the instructions on reckless aggravated battery because these instructions created the "logical impossibility" that he "unintentionally caused harm while intentionally touching [J.N.]."

23

Importantly, the definition of bodily harm provided to the jury comports with longstanding caselaw and the comments to PIK Crim. 4th 54.310 (2018 Supp.). See *State v. Robinson*, 306 Kan. 1012, 1027, 399 P.3d 194 (2017). Our Supreme Court has long defined bodily harm as "'any touching of the victim against [the victim's] will, with physical force, in an intentional hostile and aggravated manner.'" *State v. Dubish*, 234 Kan. 708, 715, 675 P.2d 877 (1984) (quoting *State v. Taylor*, 217 Kan. 706, 714, 538 P.2d 1375 [1975]). And the definition of bodily harm in the comments to PIK Crim. 4th 54.310 is identical to the challenged instruction provided to the jury.

Contrary to Trefethen's suggestion, the instruction on bodily harm does not conflict with the instructions on reckless aggravated battery. A person may cause bodily harm by intentionally touching another person with physical force and still commit reckless aggravated battery by consciously disregarding a substantial and unjustifiable risk that great bodily harm or disfigurement would result from the person's intentional act. As applied to this case, the jury could determine that Trefethen caused bodily harm by applying physical force in an intentional, hostile, and aggravated manner when he yanked J.N. by the bottom of his legs while agitated about the child's persistent crying. Additionally, the jury could also determine that Trefethen acted with the intent to stop the child's crying and, therefore, did not intentionally or knowingly cause great bodily harm but was reckless about whether great bodily harm would result.

Trefethen fails to show that the district court's bodily harm instruction inaccurately stated the law and, therefore, he fails to prove the instruction was clearly erroneous.

*Failing to Instruct on the Definition of Intentional Conduct*

Next, Trefethen submits the district court committed clear error by failing to instruct the jury on the definition of intentional conduct. He notes that the district court instructed the jury that if the State had proven that he acted intentionally, then it also

24

proved that he acted knowingly and recklessly. But while the district court provided instructions on the definitions of reckless and knowing, it did not provide an instruction on the definition of intentional.

Trefethen fails to consider that jurors are "expected to decipher many difficult phrases without receiving specific definitions." *State v. Robinson*, 261 Kan. 865, 877, 934 P.2d 38 (1997). As a result, our Supreme Court has long held that "'[i]t is only when the instructions as a whole would mislead the jury, or cause them to speculate, that additional terms should be defined.'" *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014) (quoting *State v. Norris*, 226 Kan. 90, 95, 595 P.2d 1110 [1979]). Under this rule, a district court is not required to define a word used in an instruction unless the meaning of the word under the commonly understood definition differs from the meaning of the word under its legal definition. *State v. Patton*, 33 Kan. App. 2d 391, 397, 102 P.3d 1195 (2004). In other words, the failure to give a definitional instruction is not erroneous unless the legal definition of the word means something different than the word's common meaning.

Our court has repeatedly held that no jury instruction on the definition of intentional is required because the term means the same in legal use as in common use. See, e.g., *State v. Bacon*, No. 114,951, 2017 WL 2403355, at *11 (Kan. App. 2017) (unpublished opinion), *aff'd* 309 Kan. 1235, 443 P.3d 1049 (2019); *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *3-4 (Kan. App. 2016) (unpublished opinion).

Trefethen contends his case is distinguishable from these prior decisions because during deliberations the jury asked if it could "consider the word 'intentional' when discussing knowingly?" In the presence of counsel, the district court suggested responding to the question by referring the jurors to the instructions previously provided. After Trefethen and the State agreed with this suggested response, the district court informed the jury: "I refer you to the instructions provided to you in this case."

While Trefethen alleges his case is distinguishable because of the jury question, he fails to explain why he did not ask the district court to define the word intentional in response to the jury's question but, instead, agreed with the district court's approach to leave the word undefined. In this regard, our Supreme Court has recently held: "When trial counsel affirmatively approves of a court's response to a jury's question, an assertion on appeal of error in the response is tantamount to invited error, rendering the issue unreviewable." *State v. Fraire*, 312 Kan. 786, Syl. ¶ 4, 481 P.3d 129 (2021).

Importantly, Trefethen has failed to articulate why the jury question required the district court to instruct on the definition of intentional when the term has the same meaning in law and in common parlance. Moreover, the jury did not request a definition of the term and its question did not suggest that the jury did not understand the meaning of the word intentional. Quite simply, Trefethen fails to show that the district court erred by not instructing the jury on the definition of intentional conduct.

*Cumulative Effect of Instructional Errors*

Trefethen argues that the cumulative effect of the alleged instructional errors denied him the right to a fair trial. When a party argues that the cumulative impact of alleged errors is so great that they result in an unfair trial, our court considers all the errors found even if individually each error would be considered harmless. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). In this case, the only possible error—which we have assumed but not decided —was extending the culpable mental states instruction under PIK Crim. 4th 52.020 to lesser included offenses. But a single error cannot support reversal under the cumulative error doctrine. *State v. Gonzalez*, 307 Kan. 575, 598, 412 P.3d 968 (2018). Even assuming this one instructional error occurred, there is no basis to reverse Trefethen's conviction based on cumulative error.

For his final issue, for the first time on appeal, Trefethen contends the crime of reckless aggravated battery is a logical impossibility and, therefore, is not a crime recognized in Kansas. He provides no on-point Kansas caselaw for this proposition. Trefethen simply explains:

> "In terms of aggravated battery, bodily harm requires physical touching in an intentional manner. Reckless aggravated battery, however, is the unintentional causing of great bodily harm. To commit the crime of reckless aggravated battery, then the defendant must unintentionally cause bodily harm by way of an intentional touching, a logical impossibility."

The State counters that in this issue, Trefethen has "repackaged" his sufficiency of evidence and instructional error claims previously addressed on appeal.

Trefethen acknowledges that he failed to raise this issue in the district court. Generally, issues not raised before the district court may not be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But several exceptions to this rule may apply, including: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the district court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Patterson*, 311 Kan. 59, 62, 455 P.3d 792 (2020). To invoke one of these exceptions to the general rule, an appellant must provide "an explanation why the issue is properly before the court." Kansas Supreme Court Rule 6.02(a)(5) (2021 Kan. S. Ct. R. 36).

Trefethen asserts that his "instant arguments are rooted in the law. The facts are settled, and the outcome of this appeal depends only on this Court's view of the law and, whatever this Court's view, it will be finally determinative of this appeal." We disagree.

As detailed in the Factual and Procedural Background section, the means by which the reckless aggravated battery occurred and Trefethen's mental state at the time were not settled, but highly disputed. And despite years of Kansas caselaw upholding convictions for reckless aggravated battery, Trefethen has not favored us with any on-point Kansas or foreign caselaw in support of his notion that "reckless aggravated battery is a logical impossibility and thus not a crime in Kansas."

We have already addressed and resolved Trefethen's several issues relating to the sufficiency of evidence and jury instructions which are part and parcel of this last issue on appeal. In summary, while evidence showed that Trefethen deliberately yanked J.N. up by the child's lower legs—an intentional act that caused severe injuries—he testified that he did not intend to hurt the child. As a result, the evidence showed that Trefethen acted recklessly by consciously disregarding a substantial and unjustifiable risk that circumstances existed or that a result will follow, and such disregard constituted a gross deviation from the standard of care which a reasonable person would exercise in the situation. See K.S.A. 2020 Supp. 21-5202(j).

Trefethen has not shown that any exception warrants our review of this last issue for the first time. Moreover, "[t]he decision to review an unpreserved claim under an exception is a prudential one. Even if an exception would support a decision to review a new claim, this court has no obligation to do so." *State v. Gray*, 311 Kan. 164, Syl. ¶ 1, 459 P.3d 165 (2020). All things considered, we decline to review this claim.

Affirmed.